UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER WAYNE BYERLY | ) | |
| (Social Security No. XXX-XX-6887), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:11-cv-96-RLY-WGH |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

**I.  Background**

Jennifer Wayne Byerly ("Byerly"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which found that she was overpaid disability insurance benefits ("DIB") from July 2005 to October 2007, that she was "not without fault" in causing or accepting the overpayments, and that the Social Security Administration was, therefore, entitled to a repayment of certain benefits that Plaintiff had received.

In a decision dated July 6, 2005, an Administrative Law Judge ("ALJ") determined that Byerly was disabled because she did not retain the residual functional capacity ("RFC") to perform her past work or any other work in the regional economy.   (R. 22-25).

She was found to be disabled due to medical impairments.   (R. 22).

On July 10, 2008, Byerly was informed that a determination had been made that her benefits were to cease retroactive to July 2005 because she had engaged in substantial gainful activity.   (R. 32-35).   It was confirmed on August 17, 2008, that Byerly was not entitled to benefits from July 2005 to October 2007, and that she had received an overpayment of $15,833.00 for this time period.   (R. 56-57).   After Byerly requested a waiver from repayment of the overpayment, the Social Security Administration determined that she was not entitled to a waiver.   (R. 76-77).   Byerly then appeared, pro se, accompanied by an advocate, and testified before an ALJ at a hearing held August 18, 2009.   (R. 1067-1106).   On December 21, 2009, the ALJ issued her opinion finding that Byerly was required to repay the overpayment.   (R. 15-18).   The Appeals Council denied Byerly's request for review, leaving the ALJ's decision as the final decision of the Commissioner.   (R. 6-9).   20 C.F.R. '' 404.955(a), 404.981.   Byerly then filed a Complaint on August 10, 2011, seeking judicial review of the ALJ's decision.

## II.  Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).   This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent

findings of fact, and decide questions of credibility.   *Richardson*, 402 U.S. at 399-400.

Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or

substitute its judgment for that of the Commissioner.   *See Butera v. Apfel*, 173 F.3d 1049,

1055 (7th Cir. 1999).

## III.   **The ALJ=s Decision**

The ALJ=s December 21, 2009, decision included the following findings:   (1)

Byerly was not entitled to disability benefits from July 2005 to October 2007 due to

substantial gainful activity (R. 18); (2) Byerly was overpaid disability benefits in the

amount of $15,833.00 during this time period (R. 18); (3) Byerly was not without fault in

causing or accepting overpayments (R. 18); and (4) recovery of the overpayment is not

waived (R. 18).

## IV.   **Issue**s

Plaintiff=s brief essentially raises two issues:

### 1.   **Whether the ALJ erred in determining that Plaintiff was not without fault.**

In this case, the ALJ determined that Byerly was Anot without fault@ in causing or

accepting overpayments of her disability benefits.   Absent consideration for certain trial

work periods, the Social Security Act explains that no DIB shall be payable to any

individual for any month after the third month in which she engages in substantial gainful

activity.   42 U.S.C. ' 423(e)(1).   When an individual has been overpaid DIB, the Social

Security Act provides for recovery of such overpayments by "requir[ing] such overpaid

person . . . to refund the amount in excess of the correct payment . . . ."   *Id*. ' 404(a)(1)(A).

However, the Social Security Act explains:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

*Id.* ' 404(b).   The Social Security regulations have further outlined how to determine whether an individual is or is not without fault by explaining that fault:

> depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:
>
> (a) an incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) failure to furnish information which he knew or should have known to be material; or
>
> (c) with respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. ' 404.507.   Individuals who believe that they should not have to refund the alleged overpayment are entitled to request a waiver from repayment.   *Id.* ' 404.506.

In this case, Byerly does not take issue with the finding that an overpayment was made.   Instead, she argues that the ALJ erred by finding that she was "not without fault." Specifically, Byerly argues that she believed she had sustained significant impairment-related work expenses that should have been counted to offset her earnings. She argues that consideration of her impairment-related work expenses could have affected

whether or not she was found to have engaged in substantial gainful activity during the relevant time period.   The Commissioner has provided the following rule for consideration of impairment-related work expenses:

> When we figure your earnings in deciding if you have done substantial gainful activity, we will subtract the reasonable costs to you of certain items and services which, because of your impairment(s), you need and use to enable you to work. The costs are deductible even though you also need or use the items and services to carry out daily living functions unrelated to your work.

20 C.F.R. ' 404.1576(a).   Such expenses include payments for attendant care services, medical devices, equipment, drugs and medical services, transportation costs, and other medical costs if they are directly related to an impairment and are needed to aid the individual in working.   *Id.* ' 404.1576(c).

The evidence reveals that Byerly earned $20,012.55 for 2005, $24,399.03 for 2006, and $21,988.14 for 2007.   (R. 16).   According to the Commissioner, an individual engages in substantial gainful activity if her average monthly income is as follows:   (a) 2005B $830 ($9,960 a year); (b) 2006B$860 ($10,320); and (c) 2007B$900 ($10,800).   (R. 34).   This means that Byerly essentially made $10,052.55 too much money in 2005, $14,079.03 too much in 2006, and $11,188.14 too much in 2007.   However, the evidence also reveals that Byerly had significant medical expenses during this time, including expenses for significant dental reconstructive surgery related to a car accident, treatment for cervical cancer, and substantial prescription drug costs.   (R. 980-1024).   The ALJ determined that all evidence of payments for these medical expenses was Airrelevant@ because it was not related to Byerly's *mental* impairments and, therefore, could not be

counted as impairment-related work expenses.   (R. 17).   The ALJ determined that

Byerly's potential impairment-related work expenses were only those expenses associated

with the actual mental impairments that the ALJ had determined were disabling, and not

any medical expenses associated with her alleged physical impairments.   According to the

ALJ, Byerly could not demonstrate enough impairment-related work expenses in 2005,

2006, or 2007 to drop her earnings below the substantial gainful activity level.   Therefore,

the ALJ determined that Byerly accepted disability benefits that she "knew or could have

been expected to know [were] incorrect," (20 CFR 404.507) and was, therefore, not

without fault in accepting an overpayment.

In making this determination, the ALJ did not discuss in detail or even address 42

U.S.C. ' 404(b) which explains that an ALJ Ashall specifically take into account any

physical, mental, educational, or linguistic limitation such individual may have@ in

determining whether Byerly was or was not without fault.   In this instance, the ALJ=s

failure to follow Section 404(b) is especially problematic and requires remand.   This is the

case because in the July 2005 decision finding Byerly disabled, she was found to have been

disabled because of severe mental impairments, including:   (1) major affective disorder,

rule out bipolar disorder; and (2) cognitive disorder and/or learning disabilities.   (R. 24).

Furthermore, a letter directed to the ALJ from Indiana Protection and Advocacy

Services indicates that Byerly was confused about what her actual impairments were (as

defined by the Social Security Administration) and what did and did not count as

impairment-related work expenses.   (R. 770-773).   The letter explained:

6

Ms. Byerly has a diagnosis of Pervasive developmental disability and she has also sustained multiple traumatic brain injuries throughout her life. In November 2007, Ms. Byerly was referred for psychological testing by Indiana Vocational Rehabilitation Services. (See attached). Dr. Dorothy Stephens identified a Right Hemispheric Dysfunction/Nonverbal Learning Disability, Anxiety Disorder, ADHD, Mathematics Disorder, and Occupational problems. Dr. Stephens reports that »a person with a right hemispheric dysfunction has difficulty with math skills, motor and motor planning ability, organizational difficulty, attention deficits, social adjustment problems and anxiety[»] (Page 31) and that Ms. Byerly needs assistance to manage her personal business matters. The next page of her report states that even though Jennifer has excellent verbal skills she fails to appropriately process verbal input causing misunderstandings. She also falls in the lower limits of average range in overall memory.

(R. 772). Finally, at Byerly's hearing before the ALJ, red flags were also raised about her comprehension of her impairment-related work expenses. Byerly testified that she was being accompanied by a »cognitive translator« because she »oftentimes [has] trouble understanding what someone»s asking [her].« (R. 1070). Later in the hearing, the ALJ repeatedly had to explain to Byerly that (according to the ALJ) certain medical expenses that she was trying to use did not qualify as impairment-related work expenses. (*See, e.g.*, R. 1073-74).

Given the undisputed evidence which demonstrates that Byerly suffered from a cognitive impairment, and given that the ALJ was put on notice that she was having difficulty understanding the issue of impairment-related work expenses, the ALJ was obligated to assess whether Byerly had a significant mental limitation which would impact the ALJ»s finding concerning her level of "fault" in accepting an overpayment.[1]   On

---

[1] This is important because SSR 84-26 explains that

[an] impaired individual who . . . is working and has an IRWE may be eligible for IRWE

remand, the ALJ must determine if Byerly had the sufficient mental ability to meet the standard of being "not without fault."   The ALJ must determine that, given Byerly's mental limitations, she accepted an overpayment which she either knew or could have been expected to know was incorrect.

**2.   Whether recovery of the overpayment would be against the purposes of the Social Security Act as well as equity and good conscience.**

On remand, if the ALJ determines that Plaintiff is "without fault" in accepting an overpayment because of a significant mental impairment, then the ALJ must also determine whether requiring repayment would defeat the purpose of the Social Security Act or would be against equity and good conscience in accordance with 42 U.S.C. ' 404(b).

---

deductions if he or she meets the SSA definition of disability; and because of a physical or mental impairment(s), requires assistance (services, medical devices, etc.) in order to work . . . .

It is not clear not clear from this portion of SSR 84-26 whether the impairment actually has to be an impairment that has already been found to be disabling or whether some other impairment for which medical expenses are needed in order to enable an individual to work could also qualify the individual for impairment-related work expenses.   If Byerly believed that she was not being overpaid because she had significant medical expenses and she wrongly believed that the medical expenses she was paying qualified as impairment-related work expenses, then she very well may have been without fault in accepting an overpayment (especially given her cognitive limitations).

## V.   Conclusion

The ALJ failed to follow 42 U.S.C. ' 404(b) when she decided that Byerly was Anot without fault@ in accepting an overpayment of disability benefits.   The ALJ did not "specifically take into account any physical, mental, educational, or linguistic limitation such individual may have" in determining Byerly was not without fault in accepting an overpayment.   The decision of the Commissioner is, therefore, **REMANDED**.   On remand, the ALJ must address Byerly's severe mental impairments.   If Byerly's mental impairments rendered her "without fault" (42 U.S.C. § 404(b)) in accepting an overpayment, then the ALJ must determine whether requiring her to repay the overpayment would defeat the purpose of the Social Security Act or would be against equity and good conscience.

**SO ORDERED** the 28th day of September 2012.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record